WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200

Wachovia Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria

ATTORNEYS FOR CYRUS SELECT OPPORTUNITIES
MASTER FUND LTD.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ION MEDIA NETWORKS, <u>et al.</u>, | ) | Case No. 09-13125 (JMP) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**LIMITED OBJECTION OF CYRUS SELECT OPPORTUNITIES MASTER FUND LTD
TO THE MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING THEM TO OBTAIN POSTPETITION
SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1) AND 364(e); (II) AUTHORIZING THE DEBTORS' USE OF
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364 AND (IV) SCHEDULING
<u>A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE

        Cyrus Select Opportunities Master Fund Ltd. ("Cyrus")[1] files its limited objection

to the motion (the "DIP Motion") filed by Ion Media Networks, Inc. ("Ion") and the above-

captioned debtors and debtors in possession (collectively with Ion, the "Debtors") for interim and

---

[1]     Cyrus is a holder of Second Lien Debt (as defined below).

final orders (i) authorizing them to obtain postpetition secured financing (the "DIP Financing") pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e); (ii) authorizing the debtors' use of cash collateral pursuant to 11 U.S.C. § 363, (iii) granting adequate protection pursuant to 11 U.S.C. §§ 361, 363 and 364 and (iv) scheduling a final hearing pursuant to bankruptcy rules 4001(b) and 4001(c) [Docket No. 4], and respectfully represent as follows:

## BACKGROUND[2]

1.  On May 19, 2009 (the "Petition Date"), each of the Debtors filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing their respective chapter 11 cases (collectively, the "Chapter 11 Cases"). The Debtors are operating their business as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes.

2.  Ion (formerly known as Paxson Communications Corporation) and certain of its affiliates are parties to (i) that certain Term Loan Agreement, dated as of December 30, 2005 (as may have been amended or supplemented, the "Term Credit Facility") with Wells Fargo Bank, N.A., as successor administrative agent, and certain lenders party thereto from time to time (the "Prepetition Term Lenders"); (ii) that certain Indenture, dated as of December 30, 2005 (as may have been amended or supplemented, the "First Priority Indenture"), with The Bank of New York Trust Company, N.A., as trustee, governing Floating Rate First Priority Senior Secured Notes due 2012; (iii) those certain ISDA Master Agreements, dated February 22,

---

[2] Certain of the facts set forth herein are based upon the representations of the Debtors in the DIP Motion. The rendition of those facts herein is not an admission of the truth, accuracy or completeness of such facts and Cyrus reserves all of its rights with respect thereto.

2

2006, one among Goldman Sachs Capital Markets, L.P. and the other among UBS AG (together the "Master Agreements, and collectively with the obligations under the Term Credit Facility and the First Priority Indenture, the "First Lien Debt"); (iv) that certain Indenture, dated as of December 30, 2005 (as may have been amended or supplemented, the "Second Priority Indenture"), with The Bank of New York Trust Company, N.A., as trustee, governing Floating Rate Second Priority Senior Secured Notes due 2013 (the "Second Lien Debt") and (v) that certain Pledge and Security Agreement, dated as of December 30, 2005 (as may have been amended or supplemented, the "Pledge and Security Agreement") with Bank of New York Mellon Trust Company, N.A. as collateral agent (collectively, the Prepetition Loan Documents).

3. Certain of Ion's subsidiaries (the "License Subsidiaries") are holders of broadcasting and other licenses, authorizations, waivers and permits which are issued from time to time by the FCC (the "FCC Licenses"). Upon information and belief, the License Subsidiaries are non-operating special purposes entities, the sole purpose of which is to hold the FCC Licenses.

I. **The Proposed DIP Financing.**

4. On May 19, 2009, the Debtors filed the DIP Motion, seeking authority to obtain up to $300 million in postpetition secured financing, $150 million of which is a roll-up of certain prepetition First Lien Debt. An order granting the DIP Motion on an interim basis (the "Interim DIP Order") was entered on June 2, 2009 [Docket No. 51] Pursuant to the Interim DIP Order, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders (each as defined in the Interim DIP Order) is granted security interests and liens in "all prepetition and postpetition property of the Debtors" (the "DIP Collateral") to secure the obligations under the DIP Financing. See Interim DIP Order at ¶ 10(a),(b) and (c). The Interim DIP Order provides that

3

the DIP Agent will have a first lien on all unencumbered property of the Debtors and a priming lien on all property of the Debtors that is subject to the Prepetition Secured Debt (as defined in the Interim DIP Order). Id. Further, all obligations under the DIP Facility will be superpriority claims with priority over all claims against the Debtors. See Interim DIP Order at ¶ 8.

**LIMITED OBJECTIONS**

**I.      The Court Should Not Authorize the License Subsidiaries to Enter into the DIP Financing Because the DIP Financing Does Not Benefit Their Estates.**

5.      The Court should not authorize the License Subsidiaries to enter into the DIP Financing (or guaranty obligations thereunder or grant liens with respect thereto) because, as special purposes entities with no operations, they are not receiving any value under the DIP Financing. As noted above, the Interim DIP Order provides that the DIP Collateral will include all prepetition and postpetition property of the Debtors; the Interim DIP Order also provides the DIP Lenders with superpriority claims.

6.      Presumably, the collateral includes the FCC Licenses (and any proceeds therefrom) and the License Subsidiaries are obligors with respect to amounts outstanding under the DIP Financing. Entrance into the DIP Financing by the License Subsidiaries, however, should not be permitted because the DIP Motion and related filings fail to establish that the incurrence of liens and obligations under the DIP Financing provides any value to the estates of the License Subsidiaries. Indeed, it appears clear that the entrance into the DIP Financing by the License Subsidiaries strips all value in their estates that should be for the benefit of their stakeholders in favor of the DIP Lenders.

7.      As the License Subsidiaries are not operating companies, the Debtors cannot justify –and have provided no justification for– the need for such entities to incur obligations and the liens under the DIP Financing. Instead, their assets will be used to secure

4

debt for the parent company with all of the benefits flowing to the parent company as well. Accordingly, the Court should not permit the License Subsidiaries to enter into the DIP Financing.

II. **The Court Should Not Authorize the DIP Financing Because it Contains an Improper Roll-up of Certain First Lien Obligations.**

8. The Debtors seek authority to convert approximately $150 million of First Lien Debt into postpetition obligations of the Debtors' estates under the proposed DIP Financing. This proposed "roll-up" serves only to enhance the position of the First Lien Lenders to the detriment of all other creditors. Debtor-in-possession financing is appropriate only when it serves to further the reorganization of the debtor and should not be approved if it would "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the Bank . . . ." In re Tenney Village Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989). Generally, provisions in postpetition financing agreements that deem prepetition secured debt to be postpetition debt, or that use the proceeds of postpetition financing from a prepetition secured lender to pay part or all of that lender's prepetition debt, are extraordinary provisions that are disfavored in bankruptcy and require greater scrutiny. See Bland v. Farmworker Creds., 308 B.R. 109 (S.D. Ga. 2003) ("The wholesale cross-collateralization of prepetition debt with postpetition assets can effect a massive preference in favor of the prepetition creditor if the prepetition creditor is undercollateralized."). In some instances, such provisions have been found to be per se impermissible because they are "directly contrary to the fundamental priority scheme of the Bankruptcy Code." In re Saybrook Mfg. Co., 963 F.2d 1490, 1495 (11th Cir. 1992). Even courts that have approved such provisions have stated that such provisions should "be utilized as a last resort only when the

5

NEWYORK 7201017 (2K)

debtor is otherwise unable to obtain needed financing on acceptable terms." In re Vanguard Diversified, Inc., 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983).

9. The Debtors cannot show that this roll-up is necessary or provides any benefit. Accordingly, the DIP Financing should not be permitted to the extent it includes a "roll-up" of certain of the First Lien Debt.

## CONCLUSION

10. For the foregoing reasons, Cyrus respectfully requests that the Court deny all relief with respect to the License Subsidiaries and the proposed roll-up of prepetition debt.

Dated: June 15, 2009
    New York, New York

                                  WHITE & CASE LLP
                                  1155 Avenue of the Americas
                                  New York, New York 10036-2787
                                  Telephone: (212) 819-8200
                                  Facsimile: (212) 354-8113


                           By: */s/ Gerard H. Uzzi*
                                 Gerard H. Uzzi

                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard, 49th Floor
                                 Miami, Florida 33131
                                 Telephone:  (305) 371-2700
                                 Facsimile:  (305) 358-5744
                                 Thomas E Lauria

                                 ATTORNEYS FOR CYRUS SELECT
                                 OPPORTUNITIES MASTER FUND LTD.