**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION MEDIA NETWORKS, INC., *et al.*,[1] | ) Case No. 09-13125 (JMP) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### SUMMARY OF SECOND INTERIM AND FINAL FEE APPLICATION OF MOELIS & COMPANY LLC FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS AND THE DEBTORS-IN-POSSESSION FOR THE PERIOD FROM MAY 19, 2009 THROUGH DECEMBER 18, 2009

Name of Applicant:                                      Moelis & Company LLC ("<u>Moelis</u>")

---

[1]      The Debtors in these chapter 11 cases are: ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Unrestricted Holdings, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; Open Mobile Ventures Corporation.  The location of the corporate headquarters for all Debtors except ION Media of New York, Inc. is:  601 Clearwater Park Road, West Palm Beach, Florida  33401-6233.  The location of the corporate headquarters for ION Media of New York, Inc. and the service address for all of the Debtors is:  1330 Avenue of the Americas, New York, New York  10019.

| | |
|---|---|
| Authorized to provide professional services to: | Debtors and Debtors-in-Possession |
| Effective date of retention: | *Nunc pro tunc* to May 19, 2009 |
| Period for which compensation and reimbursement are sought: | May 19, 2009 through December 18, 2009 |
| Amount of compensation sought as actual, reasonable, and necessary:[2] | $5,400,806.45 |
| Amount of expense reimbursement sought as actual, reasonable and necessary: | $58,634.82 |
| This is a(n): | Final Application |

---

[2] See the schedule on page 5 of the Final Application below for a detailed calculation of the fees and expense reimbursements requested. Moelis & Company LLC reserves the right to increase the amount of expense reimbursement sought in the event that prosecution of this Final Application causes an increase in its actual, reasonable and necessary expenses.

NY\1594364.1

**SUMMARY OF PROFESSIONAL TIME RECORDS**
**MAY 19, 2009 THROUGH DECEMBER 18, 2009**

**Moelis & Company**
SUMMARY OF HOURS WORKED

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Navid Mahmoodzadegan | Managing Director | 199.0 |
| John Momtazee | Managing Director | 42.0 |
| Steve Panagos | Vice Chairman, Recapitalization & Restructuring Group | 239.8 |
| Andrew Haber | Managing Director | 422.0 |
| Barak Klein | Senior Vice President, Recapitalization & Restructuring Group | 447.5 |
| Robert Lauria | Associate | 482.0 |
| David Caylor | Analyst | 698.0 |
| Katie Cornell | Summer Analyst | 27.0 |
| | **Total** | **2,557.3** |

A description of expenses incurred and activities performed is provided in the Final Application, below. Detailed Schedules of Hours and Expense Disbursements are provided as Exhibits "B"[3] and "C" to the Final Application.

---

[3] Moelis does not keep time records as part of its ordinary operations. Therefore, the time records note in Exhibit "B" are likely understated.

NY\1594364.1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION MEDIA NETWORKS, INC., *et al.*,[1] | ) Case No. 09-13125 (JMP) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**SECOND INTERIM AND FINAL APPLICATION OF MOELIS &
COMPANY LLC FOR COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND
NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR AND
INVESTMENT BANKER TO THE DEBTORS AND THE DEBTORS-IN-POSSESSION
FOR THE PERIOD FROM MAY 19, 2009 THROUGH DECEMBER 18, 2009**

---

[1]  The Debtors in these chapter 11 cases are:  ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Unrestricted Holdings, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; Open Mobile Ventures Corporation.  The location of the corporate headquarters for all Debtors except ION Media of New York, Inc. is:  601 Clearwater Park Road, West Palm Beach, Florida  33401-6233.  The location of the corporate headquarters for ION Media of New York, Inc. and the service address for all of the Debtors is:  1330 Avenue of the Americas, New York, New York  10019.

Pursuant to section 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), General Order M-151 Amending Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (Lifland, C.J.) (the "Amended Guidelines"), the Order Granting Debtors' Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, [Docket No. 102], and the Order under Sections 327(a) and 328(a) of the Bankruptcy Code Authorizing the Retention of Moelis & Company LLC ("Moelis") as Financial Advisor and Investment Banker to the above-captioned debtors-in-possession (the "Debtors"), [Docket No. 154], Moelis hereby submits its final application (the "Final Application") for allowance of compensation for professional services performed for the period commencing May 19, 2009 through and including December 18, 2009 (the "Final Fee Period") and reimbursement of actual and necessary expenses incurred during the Final Fee Period.  In support of this Final Application, Moelis respectfully represents as follows:

## **BACKGROUND**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicate for the relief requested herein is section 328 of the Bankruptcy Code, as contemplated by Bankruptcy Rule 2016.

2

3.      On May 19, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.

4.      On May 20, 2009, the Debtors' Application for Entry of an Order Authorizing

and Approving the Retention and Employment of Moelis & Company LLC as Financial Advisor

and Investment Banker to the Debtors, *Nunc Pro Tunc* to the Petition Date, [Docket No. 18], was

filed with the Court.  On July 13, 2009, the Court entered an order approving the application (the

"Retention Order"), [Docket No. 154].  A copy of the Retention Order is attached hereto as

Exhibit "A".

5.      The Court approved Moelis' retention as financial advisor and investment banker

to the Debtors under sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules

2014(a) and 2016 and Local Rules 2014-1 and 2016-1.  The Retention Order requires that

Moelis' compensation and expense reimbursement requests be subject to review under the

standards set forth in section 328(a) of the Bankruptcy Code, but provides that the Office of the

United States Trustee alone is entitled to challenge the reasonableness of Moelis' compensation

and expense requests under section 330 of the Bankruptcy Code.

6.      The Retention Order modifies the Amended Guidelines' time-keeping

requirements by providing that (a) Moelis' restructuring professionals are required to keep time

records in one-hour increments, (b) Moelis' professionals are not required to keep time records

on a project category basis, and (c) Moelis is not required to provide or conform to any schedule

of hourly rates.

7.      On October 29, 2009, the Court entered Order Granting Applications of Retained

Professionals for Allowance of Interim Compensation for Services Rendered and for

Reimbursement of Actual and Necessary Expenses, [Docket No. 378], approving Moelis' first

interim fee application, which allowed payment of Moelis' fees and expenses through August 31,

2009 but maintained that 10% of the outstanding fees be held until the end of the case.

Following the Court's approval, Moelis' fees up to the first interim fee application were paid

pursuant to the 10% holdback agreed on in the order.

8.       On November 24, 2009, the Court issued a Memorandum Decision, [Docket No.

438], confirming the Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of

the Bankruptcy Code (the "Plan"), [Docket No. 387].  The Plan's confirmation was facilitated by

the financial advisory services rendered by Moelis throughout the Final Fee Period.

9.       As of the date of this Application, Moelis has not received full payment for the

May, June, July, August, September, October, November and December monthly fee statements.

To date, Moelis has received $1,392,500.00 in fees and $65,320.26 in expenses related to

previously filed fee applications and also received $350,000.00 in fees and $36,398.83 in

expenses prior to the Petition Date.  Annexed hereto as Exhibit "B" is the time detail maintained

by Moelis professionals for services rendered to the Debtors during the Final Fee Period.

10.      Moelis seeks allowance of $5,400,806.45 for services rendered to the Debtors.

Moelis also seeks reimbursement of actual and necessary costs and expenses incurred during the

Final Fee Period and those not yet reimbursed in a total amount of $58,634.82.  A schedule of

disbursements is annexed hereto as Exhibit "C" and a summary of the allowance sought is shown

on the following page.

NY\1594364.1

## SUMMARY OF FEES AND EXPENSES SOUGHT

**FEES & EXPENSES**

| | |
|---|---:|
| **Post-Petition Monthly Retainers** | |
| June 2009 | $175,000.00 |
| July 2009 | 175,000.00 |
| August 2009 | 175,000.00 |
| September 2009 | 175,000.00 |
| October 2009 | 175,000.00 |
| November 2009 | 175,000.00 |
| December 2009 [2] | 101,612.90 |
| **Total Post-Petition Monthly Retainers** | **$1,151,612.90** |
| **Restructuring and Capital Transaction Fees** | |
| Capital Transaction Fee [3] | $750,000.00 |
| Restructuring Fee [4] | 5,865,375.00 |
| Total Restructuring and Capital Transaction Fees | $6,615,375.00 |
| *Lesser of:* [5] | |
| $5 million pursuant to 3(a)(ii) of the Engagement Letter | $5,000,000.00 |
| Restructuring and Capital Transaction Fees | 6,615,375.00 |
| **Total Fees before Monthly Retainers** | **$5,000,000.00** |
| Add: Post-Petition Monthly Retainers | 1,151,612.90 |
| Less: 50% Credit to Monthly Retainers [6] | (750,806.45) |
| **Total Post-Petition Fees** | **$5,400,806.45** |
| Add: Post-Petition Expenses | 58,634.82 |
| **Total Post-Petition Fees and Expenses** | **$5,459,441.27** |

## SUMMARY OF SERVICES RENDERED
## PRIOR TO AND DURING THE FINAL FEE PERIOD

11.    When the Debtors retained Moelis prior to the Petition Date, they were facing a

dire financial situation that threatened the continued existence of their on-going enterprise.

Specifically, forecasts made by the Debtors' management team ("Management") prior to the

---

[2] December 2009 monthly fee prorated through December 18, 2009
[3] Pursuant to the Moelis Engagement Letter, 0.5% of $150 million total new capital raised
[4] Pursuant to the Moelis Engagement Letter, 0.5% of face amount of first and second lien debt, which includes the $325 million Term Loan, First Priority Notes of $400 million and Second Priority Notes of $448 million
[5] Pursuant to the Moelis Engagement Letter, the total Capital Transaction Fee and Restructuring Fee based on the transaction contemplated by the Debtors' confirmed Plan can not total more than $5 million (see clause 3(a)(ii) in the Moelis Engagement Letter)
[6] Includes 50% credit of $350,000 pre-petition monthly retainers paid for April and May 2009 (*i.e.*, credit of $175,000)

NY\1594364.1

Petition Date showed that the Debtors would run out of cash in the next few months. Complicating the situation, Management also believed that if a restructuring transaction was not executed quickly, there would be a significant risk that the Debtors' customers would stop purchasing advertising spots and the Debtors would be unable to acquire content to fill its inventory.  Further, Management believed a prolonged restructuring would have a detrimental impact on the Debtors' relationships with content providers, advertisers and viewers among other vendors.  The combination of decreased sales and damaged relationships would have significantly increased the Debtors' risk of liquidation, which was expected to provide only minimal recovery to creditors.

12.     Apprised of the Debtors' urgent needs, Moelis immediately allocated a team to begin an analysis of the Debtors' situation.  The Moelis engagement team worked tirelessly during the Final Fee Period, devoting the vast majority of its time to business and financial due diligence and to the conduct of various analyses, as described below.  These services formed the basis of the preparation, negotiation and execution of the Plan, which allowed the Debtors to stabilize their operations, raise capital to appropriately fund the enterprise, provide their customers and vendors with the certainty they required, and, ultimately, to emerge from chapter 11 protection in a short period of time.

13.     The following summaries highlight certain key areas in which Moelis provided essential services to the Debtors prior to and during the Final Fee Period:

**Due Diligence**

14.     The business and financial due diligence that Moelis performed allowed it to understand, assess and monitor the operational and financial position of the Debtors in order to help the Debtors structure and execute its Plan**.** The due diligence process included, among other

6

tasks, a review of the Debtors' historical financial information, Securities and Exchange

Commission and comparable filings, operating reports and cash flow budgets, as well as

financial projections prepared by Management.  Moelis also reviewed and analyzed information

concerning industry dynamics, comparable companies and precedent merger and acquisition

("M&A") transactions.

15.      Moelis' due diligence process included numerous meetings and teleconferences

with Management.  During these conversations, Moelis and Management discussed (i) weekly

and monthly operating and financial results, (ii) Management's then current projections and

various assumptions therein and (iii) together with the Debtors' legal counsel and internal tax

experts, tax implications of cancellation of debt income and net operating losses, as well as other

tax related issues.

16.      In addition, Moelis assisted Avenue, Trilogy, Black Diamond and Canyon Capital

(together the "Initial Lenders"), the objecting minority group of first lien lenders (the "Minority

Group"), the professionals for the unsecured creditors, and other parties-in-interest and their

respective professionals with their due diligence processes.  Moelis worked extensively with

Management and the Debtors' professionals to gather and prepare the information required for

the diligence process.  Moelis also aggregated diligence questions and directed them to the

appropriate parties, helped Management prepare responses and maintained an ongoing dialogue

with the lenders' professionals and other parties-in-interest to facilitate their due diligence

processes.  This dialogue among Moelis, the lenders and other parties-in-interest involved

multiple in person meetings and teleconferences with these parties, as well as with their

respective professionals.

NY\1594364.1

**Development of Business Plan and Financial Projections**

17.     Moelis assisted in the evaluation of Management's five-year business plan that was used in the determination and negotiation of the operational and financial needs of the Debtors including solving the Debtors' near-term liquidity needs. Moelis held multiple conversations with Management to discuss the assumptions of the model, as well as the results after running various scenarios and testing key assumptions.

18.     Throughout Moelis' due diligence process, Moelis also extensively analyzed the Debtors' business plan, including assisting Management in creating multiple presentations for lenders and other stakeholders.  In addition, Moelis aided Management in creating its weekly cash flow projections.

19.     Additionally, Moelis created and led several business plan presentations with the Initial Lenders and their financial advisors, which were the basis for the proposal of the Initial DIP Facility.  Moelis also subsequently led and participated in multiple other business plan presentations using the same or similar presentation with other creditors, professionals and parties-in-interest.

**Interfacing with the Debtors' Board of Directors, Lenders, Professionals and Other Parties-in-Interest**

20.     Moelis spent a significant amount of time preparing for and participating in numerous meetings and communications with the lenders, their professionals and other parties-in-interest.  These meetings involved in-person contact, teleconferences, email conversations and other forms of communication.

21.     Moelis also assisted Management in preparing materials for discussions with various key parties-in-interest such as clients and vendors.

NY\1594364.1

22.     Moelis also attended and participated in numerous meetings (in person and telephonic) with the Debtors board of directors.

**Debtor-in-Possession Financing**

23.     Beginning in March 2009, the Debtors, Moelis and the Debtors' legal counsel engaged in extensive negotiations with a group of the Debtors' lenders, consisting of the Initial Lenders, with respect to a broad financial restructuring that would provide the flexibility necessary to continue the revitalization of the Debtors' business and further implement their strategic vision.

24.     As a result of these discussions and given the significant liquidity shortfall the Debtors faced, Management determined that the Debtors required a new money commitment of at least $150 million to (i) avoid any possible disruption of their operations during bankruptcy, (ii) provide assurance to the Debtors' content providers and other vendors of the Debtors' ability to continue as a business partner and (iii) allow the Debtors' to acquire content to fill its upcoming TV schedule.  Moelis assisted the Debtors in exploring market appetite for debtor-in-possession financing and discussed structural issues with the Debtors' legal counsel.

25.     As part of the negotiation of the Initial Lenders' restructuring proposal, Moelis assisted the Debtors in structuring and negotiating the terms of up to $300 million of debtor-in-possession financing, consisting of $150 million in new money funding and a "roll-up" of $150 million of outstanding first lien debt secured by substantially all of the Debtors' assets (the "Initial DIP Facility") with the Initial Lenders. At the same time, Moelis attempted to find third-party providers of DIP financing on more beneficial terms.  However, due to poor market conditions and lack of additional financing options, the Debtors were limited in their options to obtain better financing and filed a motion in support of the Initial DIP Facility.

9

26.      Following the Court's comments in the First Day Hearing and in response to

objections from the Minority Group, the Debtors and Moelis continued negotiations in an effort

to obtain the best terms possible for its debtor-in-possession financing. Through extensive

negotiations and analysis including multiple financial and transaction impact analyses,

presentations (including presentations to the Debtors' board of directors) and meetings

conducted or assisted by Moelis regarding potential debtor-in-possession financing and

restructuring proposals suggested by the Initial Lenders and the Minority Group as well as

alternative scenarios suggested by Moelis, the Debtors filed a motion in support of their amended

DIP proposal, which consisted of $150 million in new money funding, no "roll-up" feature and

elimination of certain plan milestones, that was approved by the Court and supported by the

Minority Group and the Initial Lenders.

**Plan of Reorganization**

27.      After being retained, Moelis held various discussions with the Initial Lenders and

other parties-in-interest to understand each party's different view on the Debtors' financial

situation and to start negotiating a Plan in conjunction with discussions surrounding the Debtors'

debtor-in-possession financing.  Given the distressed nature of the enterprise and the need to

avoid disruption of trade terms with their vendors, Moelis and the Debtors concluded that all

negotiations needed to take place quickly, and a consensual Plan that would preserve the

Debtors' trade relationships needed to be put in place.

28.      As the Debtors received restructuring proposals prior to the Petition Date as well

as through the Final Fee Period, Moelis reviewed each, analyzing each proposal in detail and

discussing it with Management and Debtors' legal counsel.  Moelis' analysis of the proposals

contemplated, among other things, an estimate of the implied recoveries the different classes of

claims would receive and the expected effects of the proposals on the Debtors' capital structure and financial performance. Based on these discussions and analyses, Moelis, the Debtors' legal counsel and Management assembled appropriate responses to the various proposals.

29.     Moelis participated in numerous teleconferences with the Lenders, their professionals and other parties-in-interest to better assist Management and the board of directors in its negotiation of various aspects of the restructuring proposals. The proposals discussed included the various DIP facilities contemplated in the restructuring process, which eventually resulted in a $150 million new money commitment from the first lien lenders under substantially better terms than the Initial DIP Facility in the most challenging of capital markets, and the conversion of substantially all of the Debtors' debt and preferred stock into equity.

30.     Moelis worked tirelessly in trying to build consensus around the Plan between the Initial Lenders and the Minority Group. Through Moelis and the Debtors efforts, the Plan was proposed that garnered over 90% in voting support from the first lien holders and was supported by the Unsecured Creditors Committee.

**Cyrus Objections and Proposals**

31.     Moelis reviewed and analyzed Cyrus' filings relating to its objections to both the Plan and the debtor-in-possession financing as well as its various financing and plan proposals, including proposals for debtor-in-possession financing and Cyrus' modified plan of reorganization. In addition, Moelis helped prepare materials and analysis regarding Cyrus' proposals to present to the Debtors' board of directors and also participated in numerous teleconferences, meetings and emails as well as board meetings concerning Cyrus' various proposals and objections.

**Valuation Analysis**

11

32.    The valuation analysis provided by Moelis was critical to the Debtors' Plan confirmation. To perform this analysis, Moelis gathered the information needed to prepare a very detailed valuation analysis that employed the following valuation methodologies: (i) comparable public company trading multiples, (ii) precedent M&A transaction multiples and (iii) discounted cash flows.  In addition, with the assistance of Management and Debtors' counsel, Moelis prepared a valuation analysis of the Debtors' expected tax attributes after their emergence from chapter 11.

33.    As part of its valuation work, Moelis analyzed comparable public companies most relevant to the Debtors in detail, including the public companies' financial results, business models and capital structures.  In addition, Moelis performed a detailed analysis of the Debtors' expected weighted average cost of capital.  Moelis also reviewed precedent M&A transactions in detail, including transaction rationale and comparable financial and business models.

34.    As part of Moelis valuation analysis, Moelis' work regarding the valuation of the Debtors' went through a rigorous internal committee process requiring approval of five senior bankers at Moelis.  Multiple meetings, calls and presentations were made internally with both the working team as well as the five banker committee to complete this process and provide a fully diligenced and vetted valuation analysis of the Debtors.

35.    Moelis presented its valuation report to the Debtors' board of directors and discussed it with the Lenders' professionals.

**Monitoring of the Chapter 11 Process**

36.    Throughout the Final Fee Period, Moelis maintained an ongoing dialogue with the Debtors and the Debtors' counsel regarding the progress made in the chapter 11 cases, assisting

12

Management in its understanding of the process and remaining abreast of all critical issues. As

part of this, Moelis participated in numerous teleconferences and email exchanges.

**Testimony and Attendance of Court Hearings**

37.      Moelis attended court hearings as appropriate, including providing testimony at

the Debtors' interim and final debtor-in-possession hearings regarding the fairness of the

proposed debtor-in-possession financing and the process to obtain the financing.

38.      Additionally, Moelis provided proffered valuation testimony at the Debtors' plan

confirmation hearing regarding the valuation of the Debtors' reorganized business and was

prepared to provide valuation testimony at the hearing.

**SUMMARY OF DISBURSEMENTS
DURING THE FINAL FEE PERIOD**

39.      Moelis incurred reasonable and necessary out-of-pocket expenses during the Final

Fee Period in the sum of $58,634.82.  Moelis' expense detail is attached hereto as Exhibit "C".

40.      The expenses incurred by Moelis include (but are not limited to) long distance

telephone calls, overnight delivery, travel expenses, local messenger service, meals, facsimiles,

postage, duplicating and financial research charges, all of which Moelis normally bills to its non-

bankruptcy clients at rates calculated to compensate Moelis for only the actual cost of the

expense.

41.      Moelis has made every effort to minimize its disbursements in these cases.  The

expenses incurred in the rendition of professional services were necessary, reasonable and

justified under the circumstances to serve the needs of the Debtors and their constituencies.

**ALLOWANCE OF FEES AND EXPENSES**

42.      Moelis believes that the Debtors have sufficient resources to pay the fees and

expenses requested herein.

NY\1594364.1

43.     Moelis believes that this Final Application, together with the attachments hereto,
substantially complies in all material respects with the guidelines set out in the Bankruptcy Code,
the Bankruptcy Rules, the Local Rules and the Retention Order.  To the extent this Final
Application does not comply in every respect with these requirements of these guidelines and the
Retention Order, Moelis respectfully requests a waiver for any such technical non-compliance.

44.     Moelis has reviewed the requirements of the Amended Guidelines and believes
that this Final Application, along with the Certification of Compliance attached hereto, complies
with the requirements of the same.

45.     While Moelis' requested compensation is subject to review and approval by this
Court under the standards set forth in section 328 of the Bankruptcy Code, it is respectfully
submitted that the amount requested by Moelis is fair and reasonable given (a) the complexity of
these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the
value of such services, and (e) the costs of comparable services other than in a case under this
title.

NY\1594364.1

**WHEREFORE,** Moelis respectfully requests that this Court enter an order (a) allowing

Moelis' fees in the aggregate amount of $5,400,806.45, plus expenses in the aggregate amount of

$58,634.82, (b) authorizing and directing the payment to Moelis of the fees and expenses that are

allowed by this Court, and (c) granting Moelis such other and further relief as the Court may

deem just and proper.

Dated:    JAN. 21, 2010
          New York, New York

MOELIS & COMPANY LLC

By: _____
Name: SAVAN G. PARAGOS
Title: MANAGING DIRECTOR

KAREN P. NG
Notary Public, State of New York
No. 01NG6070434
Qualified in Queens County
Commission Expires Mar. 4, 2014

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ION MEDIA NETWORKS, INC., *et al.*,[1] | ) Case No. 09-13125 (JMP) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## CERTIFICATION OF COMPLIANCE WITH
## GUIDELINES FOR FEES AND DISBURSEMENTS FOR
## PROFESSIONALS IN SOUTHERN DISTRICT OF NEW YORK BANKRUPTCY CASES

Steven G. Panagos certifies that:

     1.     I am a managing director of Moelis & Company LLC ("Moelis"), financial

advisor and investment banker to the above-captioned Debtors (the "Debtors").  This

---

[1] The Debtors in these chapter 11 cases are:  ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Unrestricted Holdings, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; Open Mobile Ventures Corporation.  The location of the corporate headquarters for all Debtors except ION Media of New York, Inc. is:  601 Clearwater Park Road, West Palm Beach, Florida  33401-6233.  The location of the corporate headquarters for ION Media of New York, Inc. and the service address for all of the Debtors is:  1330 Avenue of the Americas, New York, New York  10019.

certification is made pursuant to the United States Trustee's Guidelines for Reviewing

applications for Compensation and Reimbursement of Expenses filed Under 11 U.S.C. § 330 (the

"Guidelines") and General Order M-151 Amending Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases (Lifland, C.J.) (the "Amended

Guidelines"), the Order Granting Debtors' Motion to Establish Procedures for Interim

Compensation and Reimbursement of Expenses for Professionals, [Docket No. 102], and the

Order Authorizing and Approving the Retention of Moelis & Company LLC as Financial

Advisor and Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date, [Docket No.

154], in support of Moelis' final application (the "Final Application").   I have read the Final

Application and certify that, to the best of my knowledge, information and belief formed after

reasonable inquiry, except as specifically noted in this certification and described in the Final

Application: (a) the Final Application complies with the Guidelines and the Amended

Guidelines; and (b) the fees and disbursements sought by Moelis are billed at rates and in

accordance with practices customarily employed by Moelis and generally accepted by Moelis'

clients.

NY\1594364.1

2.      I have reviewed the requirements of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York and the Amended Guidelines.  To the

best of my knowledge, the Final Application complies with the requirements of the Local Rules

and the Amended Guidelines.


_Steph_
STEVEN G. PANAGOS

SWORN TO AND SUBSCRIBED   2010
before me this _21_ day of _JANUARY_, 2009

_____
Notary Public

KAREN P. NG
Notary Public, State of New York
No. 01NG6070434
Qualified in Queens County
Commission Expires Mar. 4, 20_14_

# EXHIBIT A

NY\1594364.1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ION MEDIA NETWORKS, INC., *et al.*, | ) Case No. 09-13125 (JMP) |
|  | ) |
| Debtors. | ) Jointly Administered |
|  | ) |

### ORDER AUTHORIZING AND APPROVING THE RETENTION
### OF MOELIS & COMPANY LLC AS FINANCIAL ADVISOR AND INVESTMENT
### <u>BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE</u>

Upon the application (the "***Application***")[1] of ION Media Networks, Inc. ("***ION***") and its

debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2] for entry of

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[2]    The Debtors in these chapter 11 cases are:  ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of



an order (the "***Order***") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 authorizing the retention of Moelis & Company LLC ("***Moelis***") as their financial advisor and investment banker *nunc pro tunc* to May 19, 2009 (the "***Petition Date***"); and the Court having jurisdiction to consider this Application and the relief requested therein in accordance with 28 U.S.C §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Application (the "***Hearing***"); and upon the Declaration of R. Brandon Burgess, Chairman, President and Chief Executive Officer of ION Media Networks, Inc., In Support of First Day Pleadings, sworn to on May 19, 2009, the record of the Hearing and all proceedings had before the Court; and the Court being satisfied with the representations of the Debtors that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having found that the legal and factual

---

Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Unrestricted Holdings, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; Open Mobile Ventures Corporation. The location of the corporate headquarters for all Debtors except ION Media of New York, Inc. is: 601 Clearwater Park Road, West Palm Beach, Florida 33401-6233. The location of the corporate headquarters for ION Media

bases set forth in the Application establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Application is approved to the extent provided herein, *nunc pro tunc* to the Petition Date.

2.      The Debtors are authorized to retain Moelis as their financial advisor and investment banker in these chapter 11 cases pursuant to that certain engagement letter, dated as of March 30, 2009, by and between ION and Moelis (the "***Engagement Letter***").

3.      Moelis shall be compensated in accordance with the terms of the Engagement Letter, and, in particular, all of Moelis' fees and expenses in these chapter 11 cases, including without limitation the Monthly Fee, the Restructuring Fee and the Capital Transaction Fee, are approved pursuant to section 328(a) of the Bankruptcy Code.

4.      All compensation and reimbursement of expenses payable to Moelis pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code *provided*, *however*, that the U.S. Trustee alone shall be entitled to review applications for payment of compensation and reimbursement of expenses by Moelis under the standards set forth in section 330 of the Bankruptcy Code

5.      Moelis shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules and such procedures as may be fixed by order of this Court, including the *Order Granting Debtors' Motion to Establish Procedures for Interim*

---

of New York, Inc. and the service address for all of the Debtors is: 1330 Avenue of the Americas, New

3

*Compensation and Reimbursement of Expenses for Professionals* (Docket No. 102), as may be

modified or amended; *provided, however*, that Moelis' professionals shall be required only to

keep time records in one-hour increments, Moelis' professionals shall not be obligated to keep

time records on a project category basis and Moelis shall not be required to provide or conform

to any schedule of hourly rates.

　　　　6.　　　　The provisions of **<u>Annex A</u>** to the Engagement Letter are approved in their

entirety, subject to the following until the earlier of (a) the date that a plan of reorganization is

confirmed by final order of this Court or (b) the date that these chapter 11 cases are closed:

　　　　　　　　a.　　　　All requests of Indemnified Persons for payment of indemnity,

　　　　　　　contribution or otherwise pursuant to the indemnification provisions of the

　　　　　　　Engagement Letter shall be made by means of an interim or final fee application

　　　　　　　and shall be subject to the approval of, and review by, the Court to ensure that

　　　　　　　such payment conforms to the terms of the Engagement Agreement, the

　　　　　　　Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this

　　　　　　　Court; provided, however, that in no event shall an Indemnified Person be

　　　　　　　indemnified or receive contribution to the extent that any claim or expense has

　　　　　　　been finally determined by a court of competent jurisdiction to have resulted from

　　　　　　　the bad-faith, gross negligence or willful misconduct on the party of that or any

　　　　　　　other Indemnified Person.

　　　　　　　　b.　　　　In no event shall an Indemnified Person be indemnified or receive

　　　　　　　contribution or other payment under the indemnification provisions of the

　　　　　　　Engagement Letter if the Debtors, their estates, or the official committee of

York, New York  10019.

4

unsecured creditors assert a claim for, and the Court determines by final order that

such claim arose primarily out of, such Indemnified Person's bad-faith, gross

negligence, or willful misconduct.

c.       In the event Moelis seeks reimbursement of its attorneys' fees from the

Debtors pursuant to the Engagement Letter or an Indemnified Person seeks

reimbursement of attorneys' fees from the Debtors pursuant to the Engagement

Letter, the invoices and supporting time records from such attorneys shall be

included in Moelis' own interim and final fee applications, and such invoices and

time records shall be subject to the United States Trustee's guidelines for

compensation and reimbursement of expenses and the approval of the Bankruptcy

Court under the standards of section 330 of the Bankruptcy Code without regard

to whether such attorney has been retained under section 327 of the Bankruptcy

Code and without regard to whether such attorneys' services satisfy section

330(a)(3)(C) of the Bankruptcy Code.  Until the earliest of (a) the date that a plan

of reorganization is confirmed by final order of this Court, (b) the date that these

chapter 11 cases are closed and (c) the dissolution of the Committee, the

Committee shall be provided invoices (redacted as appropriate) with respect to

such attorneys' fees and expenses, and shall have five days to object to such fees

and expenses prior to their payment.

d.       The following provision in Annex A of the Engagement Letter shall be

eliminated:  "provided, however, that, to the extent permitted by applicable law,

the Indemnified Persons shall not be responsible for amounts which, in the

aggregate, are in excess of the amount of all fees actually received by Moelis

from the Company in connection with the engagement."

7.      Paragraph 12 of the Engagement Letter is hereby deleted.

8.      In the event of a conflict between the Engagement Letter and the express terms of

this Order, this Order shall govern.

9.      The Debtors and Moelis are authorized to take all actions necessary to effectuate

the relief granted pursuant to this Order in accordance with the Application.

10.     Notice of the Application as provided therein shall be deemed good and sufficient

notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules

are satisfied by such notice.

11.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: New York, New York                          _____*s/ James M. Peck*_____
        July 13, 2009                              United States Bankruptcy Judge

# EXHIBIT B

**Moelis & Company**
**Summary of Hours Worked**
**May 19, 2009 - December 18, 2009**

| *Month* | Navid Mahmoodzadegan | John Momtazee | Steve Panagos | Barak Klein | Andrew Haber | Robert Lauria | David Caylor | Katie Cornell |
|---|---|---|---|---|---|---|---|---|
| May | 4.5 | 0.0 | 16.5 | 40.5 | 38.0 | 62.0 | 78.0 | 0.0 |
| June | 33.5 | 0.0 | 48.0 | 79.5 | 89.0 | 65.0 | 192.0 | 21.0 |
| July | 30.0 | 6.0 | 31.3 | 67.5 | 80.0 | 98.0 | 118.0 | 6.0 |
| August | 13.0 | 7.0 | 21.0 | 55.0 | 36.0 | 46.0 | 95.0 | 0.0 |
| September | 16.0 | 5.0 | 34.0 | 54.5 | 44.0 | 47.5 | 45.0 | 0.0 |
| October | 43.0 | 8.0 | 37.0 | 70.5 | 54.0 | 62.5 | 49.0 | 0.0 |
| November | 40.0 | 8.0 | 44.0 | 49.0 | 50.0 | 38.0 | 41.0 | 0.0 |
| December | 19.0 | 8.0 | 8.0 | 31.0 | 31.0 | 63.0 | 80.0 | 0.0 |
| **Total** | **199.0** | **42.0** | **239.8** | **447.5** | **422.0** | **482.0** | **698.0** | **27.0** |

2

# EXHIBIT C

NY\1594364.1

**EXPENSE SUMMARY**
May 19, 2009 – December 18, 2009

| EXPENSE CATEGORY | SERVICE PROVIDER | EXPENSE AMOUNT |
|---|---|---|
| Airfare | Various | $11,570.22 |
| Lodging | Various | $3,776.08 |
| Meals | Various | $4,826.35 |
| Parking / Ground Transportation | Various | $3,497.60 |
| Communications / Printing / Information Services | Various | $11,175.83 |
| Legal Services | Latham & Watkins LLP | $30,888.74 |
| Allowable Expense Reduction[1] | | ($7,100) |
| **Total** | | **$58,634.82** |

---

[1] Includes expense reductions of $7,100 as determined by the U.S. Trustee and reflected in the Order Granting Applications of Retained Professionals for Allowance of Interim Compensation for Services Rendered and for Reimbursement of Actual and Necessary Expenses, [Docket No. 378], as it pertains to Moelis.

2